**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:09cv188**

| | |
|---|---|
| **LISA A. BREWTON,** )  | |
| )  | |
|     **Plaintiff,** )  | |
| )  | |
| **Vs.** )  | **MEMORANDUM AND** |
| )  | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** )  | |
| **Commissioner of Social Security,** )  | |
| )  | |
|     **Defendant.** )  | |
| _____ )  | |

**THIS MATTER** is before the court pursuant to 28, United States Code,

Section 636(b), pursuant a specific Order of referral of the district court, and upon

plaintiff's Motion for Summary Judgment and the Commissioner's Motion for

Summary Judgment. Having carefully considered such motions and reviewed the

pleadings, the court enters the following findings, conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

### I.    Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance

Benefits. Plaintiff's claim was denied both initially and on reconsideration; thereafter,

plaintiff requested and was granted a hearing before an administrative law judge

("ALJ"). After conducting a hearing, the ALJ issued a decision which was

unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council.

Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

## IV.    Substantial Evidence

### A.     Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

**B.     Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

> a.     An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

> b.     An individual who does not have a "severe impairment" will not be found to be disabled;

> c.     If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

> d.     If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. 404.1520(b)-(f).  In this case, the Commissioner determined plaintiff's claim at the fourth step of the sequential evaluation process.

### C.    The Administrative Decision

At step one, the ALJ found that plaintiff had not performed any substantial gainful activity since her alleged onset date of June 29, 2005. Tr., at 18.  At steps two and three, the ALJ found that plaintiff had severe impairments consisting of joint pain in the left wrist, degenerative disc disease of the lumbar spine, tendinitis, and fibromyalgia with pain in her neck, shoulders, and back, Tr., at 18, but that she did not have any impairment or combination of impairments that met or equaled any impairment listed in 20 C.F.R. Appendix 1, Subpart P of Regulation No. 404 (hereinafter the "listings").  Tr., at 22.   The ALJ found the depression and anxiety suffered by the plaintiff  to be mild limitation and to be not severe. Tr., at 22

At step four, the ALJ was required to determine whether plaintiff could perform her past relevant work or, at step five, whether other work existed in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(e)-(g), 416.920(e)-(g). Prior to reaching the step four determination, the ALJ had to assess plaintiff's residual

functional capacity (hereinafter "RFC"). In this case, the ALJ found that plaintiff had the RFC to perform "medium work" that involved lifting and carrying fifty pounds occasionally and twenty-five pounds frequently; standing, walking, and sitting each for six hours in an eight hour workday; and frequent climbing, balancing, stooping, kneeling, crouching, crawling, reaching overhead, and handling objects. Tr., at 23. The ALJ then concluded at the fourth step of the sequential evaluation process that plaintiff could perform her past relevant work as a clerical worker, office manager, receptionist, and tax preparation clerk. Tr., at 24.

### D. Discussion

#### 1. Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error:

I. The ALJ failed to apply the law of the Circuit, to the prejudice of the plaintiff, in evaluating the effect on the plaintiff of disabling pain;

II. The ALJ's analysis of the Plaintiff's pain failed to follow this Circuit's repeated admonitions to the Commissioner of Social Security as to how to evaluate disabling pain;

III. The ALJ erred, to the prejudice of the Plaintiff, when he refused to accept the non-exertional impairment, depression, which is well described by Dr. Rhodes as above referred to, and for which she was prescribed Prozac, a serious psychiatric medication, which only partially relieved the symptoms, to the degree that Dr. Rhodes assigned a GAF of fifty five (55) to her;

IV.    ALJ Wilson further erred to the prejudice of the Plaintiff in disregarding the opinion of Dr. Roy Gallinger, her treating physician who completed a report submitted to ALJ Wilson supporting her claim for disability; and

V.     ALJ Wilson further erred in his refusal to accept the opinion of Dr. Robbins, the vocational expert, who when asked if a hypothetical individual will miss various times from work and might have to lie down four to five times a day, thirty to forty-five minutes.

Plaintiff's assignments of error will be discussed *seriatim*.

## 2.    First and Second Assignments of Error

In the First Assignment of Error, plaintiff contends that ALJ Wilson failed to apply the law of the Circuit, to the prejudice of the Plaintiff, in evaluating the effect on the Plaintiff of disabling pain.  In the Second Assignment of Error, plaintiff contends that the ALJ's analysis of the Plaintiff's pain failed to follow this Circuit's "repeated admonitions" to the Commissioner of Social Security as to how to evaluate disabling pain.  Both assignments of error address how the ALJ handled plaintiff's subjective complaints, including pain, and will be considered together.

The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of

pain is not determinative." Id., at 336. A two-step process for evaluating subjective

complaints was developed by the appellate court in Craig v. Chater, 76 F.3d 585, 589

(4th Cir. 1996), and is now reflected in Social Security Ruling 96-7p.[1]

Craig requires that the Commissioner apply a two-step analysis when assessing

the credibility of a claimant's subjective complaints of pain. See 20 C.F.R. § 416.929.

In conducting the two-step Craig analysis, Step One requires the ALJ to determine

whether there is "objective medical evidence showing the existence of a medical

impairment which could reasonably be expected to produce the actual pain, in the

amount and degree, alleged by the claimant" Craig, at 594. Once a medical

impairment is identified by the ALJ in Step One that could reasonably be expected to

produce the pain or other subjective complaint asserted, the intensity and persistence

of that pain is evaluated by the ALJ along with the extent to which such pain or other

subjective complaint limits claimant's ability to engage in work. Id.; see also 20

C.F.R. § 416.929(c).

Once the ALJ progresses to Step Two, he or she considers the following factors,

which include: (1) plaintiff's testimony and other statements concerning pain or other

---

[1] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

subjective complaints; (2) plaintiff's medical history; (3) any laboratory findings; (4) objective medical evidence of pain if any; (5) the plaintiff's activities of daily living; and (6) any course of treatment the plaintiff has undergone to alleviate pain. Craig, supra, at 595.

Review of the decision of the ALJ reveals that he correctly recited and applied the pain standard applicable in the Fourth Circuit. See Tr., at 23-24. First, the ALJ found that plaintiff had severe impairments consisting of joint pain in the left wrist, degenerative disc disease of the lumbar spine, tendinitis, and fibromyalgia with pain in her neck, shoulders, and back. Tr., at 18, but that she did not have any impairment or combination of impairments that met or equaled any impairment listed in 20 C.F.R. Appendix 1, Subpart P of Regulation No. 404. Tr., at 22. Despite plaintiff's argument, review of the ALJ's decision reveals that the ALJ carefully considered and evaluated all of plaintiff's subjective complaints, Tr., at 19-22, then applied the correct standard, Tr., at 23-24, then discussed why he did not fully credit "her hearing testimony, at least not to the extent she alleges." Tr., at 24. The ALJ explained, as follows:

> At the hearing, the claimant portrayed herself as extremely limited. She described the need for several naps during the day due to pain and fatigue. However, my review of the record does not support her allegations at the hearing. Dr. Dubiel performed a very thorough physical examination and noted largely normal findings. Even the notes from PA Stuckey/Dr. Mahar do not overwhelmingly support the

claimant's contention of disability. I recognize that the claimant has fibromyalgia and degenerative disc disease without neurological involvement, but I find that the objective medical evidence does not support her hearing testimony, at least not to the extent she alleges.

As for the assessment of Dr. Gallinger, I find that even his own treatment notes do not support his conclusions. I find his rather dire assessment to be very inconsistent with the remainder of the evidence in the record, and I do not give it controlling weight, applying SSR 96-2p.

For these reasons, I find that the claimant's statements concerning the intensity, persistence and limiting effects of her pain are not credible. As for "objective medical evidence of some condition that could reasonably be expected to produce the pain alleged," the record documents some difficulty in establishing a firm basis for the claimant's pain, although fibromyalgia appears to be the primary cause. As noted above, Dr. Rhoton found that surgery was not indicated. The claimant has some mild disc disease, but no neurological involvement. After sorting through the medical evidence, I find that the medium exertion residual functional capacity I have put forth is more than generous in this case. I find no basis to limit the claimant's residual functional capacity any further.

Tr., at 24. The findings of Dr. Dubiel, a consultative examiner, which substantially informed the ALJ's determination are accurately summarized by the ALJ at page four of his decision, Tr., at 19, as are the findings of other medical sources at pages four, five, and six of the decision, including Dr. Rhoton. Tr., at 19-21.

Such determination fully complies with the currently applicable standard for evaluating pain and other subjective complaints in the Fourth Circuit. Further, such determination is fully supported by substantial evidence of record. The undersigned finds no merit to the first and/or second assignments of error.

9

### 3. Third Assignment of Error

Plaintiff next contends that the ALJ erred when he refused to accept as severe the the non-exertional impairment, depression, "which is well described by Dr. Rhodes as above referred to, and for which she was prescribed Prozac, a serious psychiatric medication, which only partially relieved the symptoms, to the degree that Dr. Rhodes assigned a GAF of fifty five (55) to her." More specifically, the ALJ concluded that plaintiff's depression was not a severe impairment, to which plaintiff takes exception. The undersigned has read this assignment of error in three parts: first, a challenge to the severity determination; second, a challenge to the ALJ's decision not to give Dr. Rhodes opinion as to depression controlling weight as well as his assignment of a "Global Assessment of Functioning" ("GAF") score; and third, the weight to be given a prescription of a "serious psychiatric drug."

### a. Severity of an Impairment

First, severity of an impairment is a threshold determination, not a finding that an impairment is disabling.

> An impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education, or work experience.

Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984)(citations omitted). An impairment is severe if the medical evidence establishes that it significantly limits the

claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that plaintiff's depression was not a severe impairment. Tr., at 22. The question presented is whether such determination is supported by substantial evidence.

As noted by the ALJ, Tr., at 22, plaintiff admitted that she had never received any mental health treatment for her depression. Tr., at 616. Thompson v. Apfel, 199 F. Supp. 2d 798, 813-814 (W.D.Tenn. 2001) (impairment not severe, as claimant never sought further treatment). The ALJ noted "the record shows no evidence of mental deterioration or decompensation," Tr., at 22, a finding that is supported by substantial evidence of record. Plaintiff reported that she had no psychiatric hospitalizations, Tr., at 338, 392, 399, 407, 616, which lend additional support to the ALJ's determination. The ALJ also indicated that plaintiff's depression was not severe because it only mildly affected her. Tr., at 22.. The ALJ noted that the treatment notes from Dr. Matthew Mahar, as well as Mr. Travis Stuckey, Dr. Mahar's assistant, established that plaintiff's depression was "mild." Tr., at 22, 280. While those medical sources diagnosed plaintiff with depression and anxiety, Tr., at 277, 280, 443, they repeatedly found that she had an appropriate affect and demeanor. Tr., at 299, 301, 304, 307, 309, 311, 314, 419, 421, 424, 426, 429, 431, 433, 436, 438, 440, 443,

588, 592. Also, Dr. Gallinger found that plaintiff had an appropriate mood and affect. Tr., at 254, 255.

Tellingly, the treatment notes from Dr. Mahar, Physician Assistant Stuckey, and Dr. Gallinger, on whom plaintiff places great reliance, establish that review of plaintiff's own symptoms were repeatedly negative for depression and anxiety, which is contraindicative to a finding that her depression was severe. See Tr., at 267, 270, 276, 279, 298, 300, 310, 313, 418, 420, 423, 425, 428, 430, 439, 442, 496, 587, 591.

The ALJ, however, did not determine that plaintiff did not suffer from depression; rather, he determined that her depression was not severe when reviewed under the "B" criteria standards because there were "mild restriction of activities of daily living; mild limitation in social functioning; mild limitation in the area of concentration, persistence, or pace; and no episodes of decompensation." Tr., at 22. He further found the plaintiff's depression did not meet the "C" criteria in that "she does not have any episodes of decompensation or inability to function outside a highly supportive living arrangement or the area of her home." Tr., at 23. "The mere diagnosis of [an impairment] . . . says nothing about the severity of the condition." Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). The ALJ reasoned that the consultative psychiatric evaluation conducted by Dr. Rhoads and the consultative physical evaluation conducted by Dr. Barbara Dubiel contained findings establishing

that plaintiff functioned quite well psychologically. Such determination is supported by substantial evidence of record, inasmuch as Dr. Rhoads found that Plaintiff was pleasant, polite, and cooperative, with no hallucinations, delusions, or ideas of reference; only mild depression, anxiety, and psychomotor retardation; a good fund of information; good judgment; fair insight; and average intelligence. See Tr., at 339-340, 393-394, 400-401, 408-409. Dr. Dubiel also found that Plaintiff was pleasant, friendly, and cheerful. Tr., at 413. Additional evidence of record further supports the ALJ's decision inasmuch as plaintiff's mother and plaintiff herself as they reported that she had no difficulties paying attention, Tr., at 155, concentrating, Tr., at 164, 332, remembering, Tr. 164, 332, understanding, Tr., at 164, 332, following instructions, Tr., at 164, 332, completing tasks, Tr., at 164, 332, getting along with others , Tr., at 156, 164, 165, 332, 333, handling changes in routine, Tr., at 156, stress, Tr., at 333, or with mental performance, Tr., at 157. Thus, the ALJ's determination that plaintiff's depression was not severe is supported by substantial evidence.

### b. Dr. Rhodes Opinion as to Depression and his Assignment of a GAF Score of 55

Plaintiff next challenges the ALJ's decision not to give Dr. Rhodes opinion as to depression controlling weight as well as his assignment of a GAF score of 55. Specifically, plaintiff argues that the ALJ's characterization of Dr. Rhode's report as

finding that "'[s]he functioned quite well from a psychological standpoint' . . . . is clearly erroneous, with respect to what Dr. Rhodes wrote in his report above quoted." Plaintiff's Brief, at 2-3. In the same paragraph, however, plaintiff states "Dr. Rhodes indicated in his report an affect of mild depression, mild psychomotor retardation, and mild anxiety." Id., at 2. Plaintiff also relies on Dr. Rhodes' report of plaintiff's subjective complaints of depression, id., at 2-3, 7.

The GAF scale judges an individual's level of functioning only at the time of evaluation. *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, 30 (4th ed. 1994). A GAF score of 51-60 would indicate moderate symptoms or moderate difficulty in social, occupational, or school functioning. However, "[t]he mere diagnosis of [an impairment] . . . says nothing about the severity of the condition." Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Instead, there must be evidence that the impairment also impacted Plaintiff's ability to perform basic work activities. Rogers v. Massanari, 226 F. Supp. 2d 1040, 1045 (E.D.Mo. 2002). The ALJ never found that Dr. Mahar, Physician Assistant Stuckey, Dr. Rhoads, and Dr. Dubiel were incorrect when they diagnosed plaintiff with depression; however, none of those medical sources found that such impairment impacted plaintiff's ability to perform basic work activities. While Dr. Rhoads assigned plaintiff a GAF score of 55, it is well-established that GAF scores ranging from even 45 to 50 are not evidence

that a claimant's mental impairment is vocationally disabling. Wind v. Barnhart, 2005 WL 1317040, at *6 n.5 (11th Cir. Jun. 2, 2005) (noting that "the Commissioner has declined to endorse GAF scale for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to severity requirements of mental disorders listings."); Ward v. Astrue, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) ("[A]n opinion concerning GAF, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations."); Kornecky v. Commissioner, 2006 WL 305648, at *13 (6th Cir. Feb. 9, 2006) (GAF score "may have little or no bearing" on claimant's occupational functioning); Querido v. Barnhart, 344 F. Supp. 2d 236, 246 (D. Mass. 2004) (GAF score of 50, standing alone, does not provide significant insight into whether claimant can work); Lopez v. Barnhart, 2003 WL 22351956, at *2 (10th Cir. Oct. 16, 2003) (GAF score of 40 may indicate problems unrelated to work ability and, standing alone, "does not evidence an impairment seriously interfering with claimant's ability to work.") Despite the GAF score of 55,

Dr. Rhoads' findings provide substantial evidence that plaintiff functioned well psychologically.

* * *

The evidence of record cited by plaintiff did not establish that her depression was severe. Instead, substantial evidence of record supports the ALJ's determination that Plaintiff's depression was a non-severe impairment.

Put another way, simply being diagnosed as suffering from depression does not mean that someone cannot work. In this case, the ALJ accepted the diagnosis of both treating and consultative medical sources and then reviewed all the evidence, including observations made by the medical sources, to determine what vocational impact such illness had on plaintiff. The ALJ's determinations are supported by substantial evidence.

### c. Prescription of Prozac

Plaintiff next argues that the prescription of a "serious psychiatric medication," to wit, Prozac, somehow cuts against the ALJ's determination that plaintiff's depression did not interfere with her ability to perform basic work activities. Accepting that Dr. Rhoads and Dr. Dubiel reported that Plaintiff was prescribed Prozac, Tr., at 338, 392, 399, 407, 412, those prescriptions in and of themselves were not sufficient to establish that her depression was severe in the absence of evidence showing that the impairment impacted her ability to perform basic work activities. Hensley, 352 F.3d at 357 (mere fact that claimant was prescribed antidepressant did

not mean impairment was severe). In <u>Preston v. Heckler</u>, 769 F.2d 988 (4th Cir. 1985), the Court of Appeals for the Fourth Circuit held:

> Because noncompliance with an effective remedial measure provides an alternative basis for denying benefits, the fact finder may draw upon it to negate at any stage of the sequential analysis an otherwise allowable finding of disability. And because in the general proof scheme, this basis for denying benefits is analogous to that involving the establishment of residual functional capacity to engage in other gainful employment, the burden to establish it by substantial evidence should also be on the Secretary.

<u>Id.</u>, at 990. The law and regulations governing the issue of failure to follow prescribed treatment or medication, as well as substantial evidence of record, support the ALJ's finding because plaintiff failed to follow prescribed treatment by failing to take the "serious psychiatric medication" Prozac, which could have alleviated them, and which in turn supports the ALJ finding that her depression was not severe. <u>Jones v. Callahan</u>, 122 F.3d 1148, 1153 (8th Cir. 1997) (mental impairment not severe, given no evidence of regularly taking medication). Perhaps most compelling, the plaintiff testified at the administrative hearing that she was currently taking *no* mental health medications. Tr., at 616-17. Substantial evidence supports the ALJ's determinations.

## 4. Fourth Assignment of Error

In her fourth assignment of error, plaintiff argues that the ALJ erred by disregarding the opinion of Dr. Roy Gallinger, her treating physician, who completed a report submitted to ALJ Wilson supporting her claim for disability.

A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. <u>Mitchell v. Schweiker</u>, 699 F.2d 185, 187 (4th Cir. 1983). The opinion of a treating physician is only entitled to controlling weight if it is supported by "clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2).

> If a physician's opinion is not given controlling weight, then the "factors listed below" and in paragraphs (d)(3) through (5) used to determine the amount of weight to be given it are (1) the length of the treatment relationship and the frequency of examination ("the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"); (2) the nature and extent of the treatment relationship; (3) supportability ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); (4) consistency ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); and (5) specialization ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). <u>Id.</u> The regulation also makes clear, however, that the ultimate determination of disability is reserved for the Commissioner, and "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(e)(1).

<u>Pittman v. Massanari</u> 141 F.Supp.2d 601, *608 (W.D.N.C. 2001)(Horn, C.M.J.)

On June 24, 2008, Dr. Roy Gallinger, plaintiff's treating physician, opined that plaintiff, as a result of pain, experienced problems with concentration, attention, depression, anxiety, writing, and keyboarding, and was limited to sitting for thirty

minutes at one time and four hours total in an eight hour workday; standing or walking for four hours at one time and about four hours total in an eight hour workday; lying down very often at unpredictable intervals during a regular workday for thirty minutes at a time; lifting less than ten pounds occasionally; and occasionally reaching, pushing, pulling, handling, and fingering. Tr., at 284-86. Dr. Gallinger also opined that plaintiff needed to make six to eight trips to the rest room per day; had good and bad days; and experienced sedation as a side effect of medication. Tr., at 286.

The ALJ found that Dr. Gallinger's opinion was not entitled to controlling weight because it was not supported by medically acceptable clinical and laboratory diagnostic techniques because Dr. Gallinger's treating notes (found in the record at Tr., at 253-266, 462-500) were not supportive of his opinion. If anything, Dr. Gallinger's clinical findings were antithetical to his supportive opinion: he found that plaintiff had significantly improved pain, Tr., at 474, 475, a normal gait, Tr., at 253, 255, 261, 263, 266, 480, 491, 497, normal balance and motor strength, Tr., at 253, 255, 261, 263, 266, 480, 491, 497, no deformities in the extremities, Tr., at 486, 491, 497, and an appropriate mood and affect, Tr., at 254, 255.

The ALJ also found that Dr. Gallinger's opinion was not entitled to controlling weight because it was inconsistent with the other evidence of record. Tr., at 21, 24.

Specifically, as noted by the ALJ, Tr., at 19, 24, Dr. Dubiel found that Plaintiff had intact cranial nerves; full motor strength in all muscle groups; intact sensation; good coordination; the ability to manipulate small objects with her hands without difficulty; the ability to heel and toe walk and do a full squat without difficulty; full range of motion of the hips, knees, ankles, toes, shoulders, elbows, wrists, and fingers; and a normal gait. Tr., at 413-414. Further, as the ALJ pointed out, Tr., at 19, 22, 24, Dr. Mahar and Physician Assistant Stuckey found that plaintiff's depression was mild, Tr., at 280; that she had a normal heart; intact cranial nerves; a negative straight leg raising test; full range of motion of the neck; and an appropriate affect. Tr., at 268, 299, 301, 304, 307, 309, 311, 314, 419, 421, 424, 426, 429, 431, 433, 436, 438, 440, 443, 588, 592. As previously discussed, the ALJ also noted that Dr. Rhoads found that plaintiff was pleasant, cooperative, and polite, with no hallucinations, delusions, or ideas of reference; only mild depression, anxiety, and psychomotor retardation; a good fund of information; good judgment; fair insight; and average intelligence. Tr., at 339-340, 393-394, 400-401, 408-409. The ALJ also noted that Dr. Martin, the DDS physician, opined that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand, walk, and sit each for about six hours in an eight hour workday; and push and pull on an unlimited basis. Tr., at 23, 291-292, 376. The ALJ properly found that Dr. Gallinger's opinion was not entitled to controlling weight.

Plaintiff goes on to argue that even if the ALJ properly found that Dr. Gallinger's opinion was not entitled to controlling weight, the ALJ still had to weigh that opinion using the factors contained in 20 C.F.R. §§ 404.1527(d), 416.927(d)6 and provide the amount of weight that it was being afforded, which plaintiff claims he failed to do. Plaintiff's Brief, at 8, 9. Plaintiff is mistaken. First, failure to mention the factors contained in 20 C.F.R. §§ 404.1527(d), 416.927(d) when weighing a treating physician's opinion is not the third-rail of Social Security law; rather, the weight assigned the opinion of a treating physician can be "ascertained from the entire record . . . ." Botta v. Barnhart, 475 F. Supp. 2d 174, 188 (E.D.N.Y. 2007). In this case, the court can adequately deduce that the ALJ adequately considered Dr. Gallinger's opinion as that of a primary care physician, as the ALJ's recited at length the various impairments plaintiff sought treatment for from Dr. Gallinger. Tr., at 20-21. The ALJ also considered the longstanding treating relationship between Dr. Gallinger and Plaintiff, as he noted that Dr. Gallinger treated plaintiff since at least 2006. Tr., at 20. The ALJ also considered and noted the frequency of the examinations conducted by Dr. Gallinger, Tr., at 20-21, and further considered the "supportability" of Dr. Gallinger's opinion by stating that it was not supported by his treating records. Tr., at 24. The ALJ also considered the "nature and extent of the treatment" provided by Dr. Gallinger, as he observed that Dr. Gallinger treated plaintiff for a variety of

impairments. Finally, the ALJ considered the consistency of Dr. Gallinger's opinion with the other evidence of record, as he noted that the opinion was inconsistent with that evidence. Tr., at 24.

While the ALJ clearly considered all the factors, he did not explicitly state how much weight he was affording Dr. Gallinger's opinion; however, he did expressly find that the opinion was not entitled to "controlling weight." Tr., at 24. The implicit finding was that Dr. Gallinger's opinion was not entitled to any weight whatsoever. In Barfield v. Astrue, 2007 WL 4139402, at *4 (D.Kan. Nov. 16, 2007), the district court found:

> The court finds no error arising from the ALJ's failure to articulate the weight given to the treating physician's opinion. Implicit in the ALJ's decision in this case is a finding that Dr. McKinney's opinion is not entitled to controlling weight and, indeed, is entitled to no weight whatsoever.

Id. The ALJ's implicit finding that Dr. Gallinger's opinion was entitled to no weight is then made manifest by the ALJ not including any limitations in his RFC assessment reflecting that opinion. Tr., at 23. While the court would prefer an explicit determination by the ALJ, the implicit determination is readily apparent and satisfies the regulation and current case law. In the end, the real issue is whether the ALJ properly assigned no weight to a treating physician's opinion, and in this particular

situation, the ALJ's decision to do so was proper inasmuch as such decision is supported by substantial evidence of record which he ably recited in his decision.

### 5.    Fifth Assignment of Error

Finally, plaintiff contends that the ALJ erred in his refusal to accept the opinion of Dr. Robbins, the vocational expert, who when asked if a hypothetical individual who would miss various times from work and might have to lie down four to five times a day, thirty to forty-five minutes "would be unemployable in any occupations in the local or national economy," Tr., at 622-623, replied that such individual would be unemployable.

Hypothetical questions posed by an ALJ to a vocational expert must fully describe a plaintiff's impairments and accurately set forth the extent and duration of the claimant's pain, if any. Cornett v. Califano, 590 F.2d 91 (4th Cir. 1978). Where the ALJ properly formulates his hypothetical to accurately reflect the condition and limitations of the claimant, the ALJ is entitled to afford the opinion of the vocational expert great weight. Shively v. Heckler, 739 F.2d 984 (4th Cir. 1984). The second hypothetical, to which plaintiff refers in her assignment of error, appears to be a hypothetical formulated by the ALJ in the alternative.

The ALJ's first hypothetical question to the vocational expert, Tr., at 621-622, which was the basis of his step four finding, precisely reflected the limitations

contained in the ALJ's RFC assessment. C.f. Tr., at 23. The VE testified that given the assessed RFC such a hypothetical individual could perform plaintiff's past relevant work. Tr., at 622. Vocational expert testimony as to what work an individual can perform constitutes substantial evidence in support of the Commissioner's decision when, as here, it is given in response to a hypothetical question based on an accurate RFC. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). Based on such expert testimony, the ALJ concluded that plaintiff was capable of performing her past relevant work and therefore not disabled.

The second hypothetical involved limitations that were not ultimately accepted by the ALJ. Specifically, plaintiff asserts that in response to a second hypothetical describing an individual requiring the need to miss various times from work, including missing work four-to-five times a day for prolonged periods of time, the VE concluded that such a limitation would preclude all work. Tr., at 622-623.

The RFC ultimately found by the ALJ does not, however, include a need to miss various times from work. Rather than an attack on the VE's opinion, or an ALJ's lack of acceptance of such opinion, plaintiff's argument is instead an assignment of error as to the RFC assigned by the ALJ.

The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations

and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at or immediately before the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

Here, plaintiff asserted that she needs to lie down at unpredictable intervals during a workday. Tr., at 22. This testimony does not in-and-of itself merit inclusion in the ALJ's RFC. The ALJ properly found that plaintiff's subjective complaints of disabling pain were not entirely credible, Tr., at 19, 21-22, 23-24, including her complaint that she "needed to lie down at unpredictable intervals - very often for thirty minutes at a time - during a regular work day." Tr., at 21. An ALJ is not obliged to accept as true a claimant's self-serving, subjective statements, Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990), and the ALJ, as already explained, has articulable reasons to not fully credit her testimony. The ALJ quite properly did not include a need to lie down intermittently at work in his RFC.

The ALJ's hypothetical reasonably incorporated the limitations he found to be present. Shively v. Heckler, 739 F.2d 987, 990-991 (4th Cir. 1985). Substantial evidence supports the ALJ's RFC assessment. .

  E.    New Evidence

Plaintiff has also filed a Motion to Receive New and Material Evidence (#8). Plaintiff's new evidence appears to be two additional mental health opinions that were developed after the hearing decision issued. For cause, plaintiff argues that counsel representing her in this appeal was not counsel representing her before the Commissioner, and that he did not have an opportunity, therefore, to present such new evidence to the Commissioner. This assertion as to cause does not, however, appear to be true.

The court has accepted that such opinions solicited by plaintiff's counsel after the ALJ issued his decision are new. They do, however, appear to be material. The sixth sentence of 42, United States Code, Section 405(g) provides:

> The court may, . . . at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

Id. In Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93 (4th Cir. 1991),[2] the Court of Appeals for the Fourth Circuit held that evidence is new if it "is

---

[2] While the appellate court in Wilkins was addressing whether the Appeals Council properly addressed evidence which the claimant represented as new and material, the undersigned finds the Wilkins definitions instructive and appropriate in the circumstances

not duplicative or cumulative," and is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Id., at 96. See also Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). While it appears that such evidence is new, in that it was generated after the decision, it does not appear that there is a reasonable possibility that had such evidence been available to the ALJ there would have been a different outcome. Neither evaluation would have been assigned any weight by the ALJ because they are not properly supported and are inconsistent with the other evidence of record. Neither opinion is retrospective in nature and, consequently, do not relate to the period on or before the date of the ALJ's decision. Although Dr. Barnettt opined that plaintiff's diagnoses and limitations existed at least as far back as June 29, 2005 ( her revised alleged onset date of disability), that retrospective opinion is without merit as the other evidence concerning plaintiff's mental impairments provides the ALJ with substantial evidence that plaintiff did not suffer from the diagnoses and limitations that were opined to by Dr. Barnett prior to the time the ALJ issued his decision on September 18, 2008.

Finally, the undersigned has considered the requirement of showing cause, and the only purported cause for not submitting such evidence to the Commissioner is that

---

presented by this case.

counsel on appeal was not counsel for plaintiff during the administrative process.

Plaintiff explains in her brief that her counsel upon judicial review

> did not try the case before the ALJ, and thus did not have an opportunity to obtain and submit [the] evaluations to the ALJ.

 Plaintiff's Motion to Submit New and Material Evidence, at 2. The undersigned is most troubled with the allegations contained in the response, to which counsel for plaintiff has failed to reply.  See L.Cv.R. 7.1 (reply to be filed within seven days). The Commissioner states that counsel upon judicial review is Stanford K. Clontz, and that such attorney works for the firm of *Gudger & Gudger*, P.A., based on a shared address and that his legal assistant is Mr. James H. Toms, and that such legal assistant is employed by *Gudger & Gudger*, P.A.  Review of the transcript reveals that Mr. Gudger was substituted for Mr. Peterson after the unfavorable decision of the ALJ, and that Mr. Gudger represented plaintiff throughout review by the Appeals Council. Indeed, Mr. Toms even wrote letters to the Commissioner during such relevant period on Gudger & Gudger, PA, letterhead, asking for an extension of time to submit new evidence to the Appeals Council.

The undersigned is not aware as to whether  Mr. Clontz is an associate, partner, or of counsel at the Gudger firm, but is aware that it is common practice in Asheville for lawyers to share office space.  See N.C.R.P.C. 116.  What is most troubling, and

perhaps most telling, is that Mr. Clontz represents to the court in his motion that it was he who secured the reports of Drs. Burke and Barnett, Plaintiff's Motion, at 3; however, Dr. Burke forwarded her completed evaluation to Gudger & Gudger, P.A. to the attention of Mr. Toms.  See Plaintiff's Brief, at Ex. 2, pages 1, 5. During the administrative proceedings Mr. Toms informed the Appeals Council that *Gudger & Gudger*, P.A. was representing Plaintiff before the Commissioner as to her request for review of the ALJ's decision, and that the firm intended to submit "new and material evidence" in association with that request.  Tr., at 8-9.  Thus, it would appear  to the court that plaintiff did have an opportunity to present evidence from Dr. Burnett and Dr. Burke to the Commissioner during the administrative process, making it not possible for plaintiff to establish "good cause" for presenting such information to this court for the first time.

* * *

In any event, the undersigned's recommendation as to this motion is that the district court deny the motion as it is not material.  In the alternative, the undersigned would recommend to the district court that it be denied for lack of good cause, with plaintiff being afforded an opportunity, through the objection process, to clarify at all relevant points who actually represented plaintiff and whether indeed Mr. Clontz is

a member of Mr. Gudger's firm or whether they engaged in a joint representation of her legal interests.

**F.      Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error.   Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence.  See <u>Richardson v. Perales</u>, <u>supra</u>; <u>Hays v. Sullivan</u>, <u>supra</u>.  Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Richardson v. Perales</u>, <u>supra</u>, the undersigned must recommend to the district court that plaintiff's Motion for Summary Judgment be denied, the Commissioner's Motion for Summary Judgment be granted, and that the decision of the Commissioner be affirmed.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)      the decision of the Commissioner, denying the relief sought by plaintiff, be **AFFIRMED**;

(2)     the plaintiff's Motion for Summary Judgment be **DENIED**;

(3)     the Commissioner's Motion for Summary Judgment be **GRANTED**;

(4)     plaintiff's Motion to Receive New and Material Evidence (#8) be **DENIED**; and

(4)     this action be **DISMISSED**.


## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 120

Signed: July 26, 2010

Dennis L. Howell
United States Magistrate Judge

31